THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN W. MCBRIDE, Plaintiff in Error.

*Opinion filed April 23, 1908—Rehearing denied June 4, 1908.*

1. CONSTITUTIONAL LAW—*presumption is that a statute is valid.* In determining the constitutionality of a statute the presumption is that the act is valid, and all doubts or uncertainties, arising either from the language of the constitution or the statute, must be resolved in favor of the statute, and courts will declare the statute void only in case of a clear conflict with the constitution.

2. SAME—*doubts must be resolved in favor of validity of law.* It is the duty of a court to construe an act of the legislature so as to uphold its constitutionality if it can reasonably be done, and if its construction is doubtful the doubt should be resolved in favor of the law.

3. SAME—*plurality of title is no objection if act deals with but one subject.* That the title of an act expresses more than one subject does not render the act invalid if the act itself deals with but one subject, since the subject expressed in the title and not embraced in the act may be regarded as surplusage.

4. SAME—*purpose of constitutional provision concerning titles of acts.* The provision of the constitution that no act shall embrace more than one subject and that shall be expressed in its title is intended only to prevent the incorporating, in one act, of matters not related to the subject of the legislation and of which the title gives no hint, and such provision is directed against the act itself and not against its title.

5. SAME—*constitution does not require that act contain but one provision.* The constitutional requirement that no act shall embrace more than one "subject" does not mean one "provision," and any number of provisions may be contained in the act for the accomplishment of the legislative purpose, provided they are not inconsistent with or foreign to the general subject of the act and legitimately tend to effectuate the object of the legislation.

6. SAME—*Local Option law does not embrace more than one subject.* The Local Option law of 1907 (Laws of 1907, p. 297,) embraces but one subject, which is the determination, by the legal voters of a certain district, whether the sale of intoxicating liquors shall be prohibited therein; and the fact that the act contains provisions for restoring to its former condition territory which has been made anti-saloon territory, so that the question of license shall be left to the municipal authorities, does not render the act invalid, as embracing more than one subject.

7. SAME—*rule where act embraces some matter not expressed in its title.* If an act embraces some matter not expressed in its title it is unconstitutional and void only as to such matter, unless the provisions are so connected together in subject matter, meaning or purpose that it cannot be presumed the legislature would have passed, or the people have voted for, the one without the other.

8. SAME—*title of act is not required to be a synopsis of the act.* If the title of an act fairly indicates the general subject and reasonably covers all the provisions of the act, and is not calculated to mislead the legislature or the people, it is a sufficient compliance with the constitutional requirement that the subject of the act shall be expressed in its title; and this is true whether the act is to become operative with or without a vote of the people.

9. SAME—*provisions of the Local Option law respecting forgery and perjury do not render it void.* The provisions of the Local Option law of 1907 making a person who forges a signature to the petition guilty of forgery and one who swears falsely in verifying the petition guilty of perjury are proper regulations and safeguards such as are customarily found in election laws, and do not render the act void as creating new crimes of which no hint is given in the title. (*Milne* v. *People,* 224 Ill. 125, distinguished.)

10. SAME—*provision making it unnecessary for information to charge the kind of liquor sold is valid.* The provisions of the Local Option law of 1907 specifying what shall be included in the term "intoxicating liquors," and making it unnecessary to charge in the information what kind of liquor was sold or the name of the person to whom it was sold, are not unconstitutional; but it is necessary that any prosecution under the act be for selling intoxicating liquor, and the sale must be alleged.

11. SAME—*Local Option law does not change doctrine of reasonable doubt in criminal cases.* The provision of the Local Option law of 1907 making the United States internal revenue stamp or receipt *prima facie* evidence of a sale of intoxicating liquor, by the person to whom it is issued, at his place of business where the stamp or receipt is posted, merely establishes a rule of evidence, and does not change the fundamental rule as to the burden of proof and quantum of evidence necessary to a conviction in a criminal case.

12. SAME—*legislature has power to make one fact prima facie evidence of another.* The legislature has power to prescribe that one fact shall be *prima facie* evidence of a certain other fact, provided there is some mutual connection between the facts, and the existence of the established fact reasonably tends to raise an inference of the other; but the right of one accused of crime to have

his case submitted to the jury upon all the evidence, which must establish his guilt beyond a reasonable doubt, cannot be taken away.

13. SAME—*effect of provision of Local Option law respecting failure to give notice of election.* The question of the legality of that provision of the Local Option law which provides that a failure to give the notice of election specified in the act shall not affect the validity of the vote can only arise in case no notice of the election is given, and the determination of such question will depend upon the particular facts and circumstances and will not affect the whole act.

14. SAME—*provision suspending operation of license ordinances does not invalidate act.* The provision of the Local Option law of 1907 that during the time any territory is anti-saloon territory the operation of ordinances relating to sales of liquor and dram-shop licenses therein shall be suspended, so far as inconsistent with the act, does not invalidate the act.

15. SAME—*the provision requiring municipalities to refund unearned license fees does not invalidate act.* The provision of the Local Option law of 1907 requiring a municipality to refund the unearned portion of a license fee received by it is within the general subject of the title of the act and does not have the effect of compelling a municipality to incur a debt against its will; but if such provision were regarded as void, its invalidity would not affect the remainder of the act.

16. SAME—*Local Option law is not void as changing the charters of municipal corporations.* The Local Option law of 1907 is not void upon the alleged ground that it changes the charters of municipal corporations, overturns and abolishes local self-government and authorizes voters outside of municipalities to dictate the policies of such municipalities, since municipal corporations are creatures of the legislature, and their powers and privileges may be changed, modified or taken away by the legislature by general law.

17. SAME—*fact that the Local Option law defines certain words and terms does not invalidate it.* The fact that the Local Option law of 1907 defines certain words and terms and explains their meaning as used in the act constitutes no valid objection to the act; nor is the act objectionable because the definition of the term "intoxicating liquors" does not state how much water might be mingled with the liquors and still leave them intoxicating liquors.

18. SAME—*provision of the Local Option law regulating sales of liquor by druggists is proper.* The provision of the Local Option law of 1907 exempting sales of liquor by druggists, under certain conditions, from the prohibition of the act is a proper regulation, since such sales do not partake of the nature of the saloon business.

19. SAME—*Local Option law not invalid as giving outside voters the right to determine the use of money in a city.* The provision of the Local Option law respecting the refunding of unearned license fees by a municipal corporation does not invalidate the act as giving voters residing outside of a city the right to determine the use of money in the city, since the voters merely determine whether territory shall or shall not be anti-saloon territory, and do not make the law or determine that license fees shall be refunded.

20. SAME—*title of Local Option law is not misleading in using words "popular vote."* The title of the Local Option law of 1907 is not misleading in stating that it is an act for the creation of anti-saloon territory by "popular vote" whereas the act itself provides that a majority of the legal voters voting upon the proposition shall govern, since any election at which every elector is entitled to vote can be regarded only as an election by popular vote.

21. SAME—*form of ballot for local option election is not misleading.* The form of the ballot prescribed by the Local Option law for the election to determine whether territory shall become anti-saloon territory is not so misleading or ambiguous as to render the act invalid.

22. SAME—*the Local Option law does not amend or revive any law.* The Local Option law of 1907 does not purport to amend or revive any law, and its only effect is to withdraw certain territory from the operation of existing laws by which the sale of liquor is licensed, regulated or prohibited; and the fact that the act adopts the provisions of the general election law and adds to existing laws certain conditions, under which druggists may make sales of liquor in anti-saloon territory, does not invalidate the act.

23. SAME—*Local Option law does not violate inter-State commerce provision of Federal constitution.* The provision of the Local Option law of 1907 that the taking of orders or the making of agreements in anti-saloon territory for the sale or delivery of intoxicating liquors shall be held to be an unlawful selling will not be construed as violating the inter-State commerce provision of the Federal constitution, since the act does not purport to control importation of liquor from other States, and it must be presumed the legislature has not exceeded its jurisdiction.

24. SAME—*Local Option law does not delegate legislative functions to the people.* The Local Option law of 1907 does not purport to deal with the liquor traffic except in anti-saloon territory, but as to that subject it is perfect and complete and not in violation of any constitutional provision, and hence the fact that it is to become operative upon a vote of the people of the territory to be affected does not constitute a delegation of legislative fuctions to the people.

25. SAME—*Local Option law not invalid as varying punishment for selling liquor in different localities.* The Local Option law of 1907 does not vary the punishment for selling liquor as between saloon territory and anti-saloon territory, since the offenses under the Dram-shop act and the Local Option law are not the same; nor would a change of venue from anti-saloon territory to saloon territory have any effect upon the degree of punishment in the case of one accused of selling liquor in anti-saloon territory.

26. SAME—*Local Option law does not deprive dram-shop keepers of property without due process of law.* A license to sell liquor is not a contract and creates no vested rights, but is merely a permit to do what otherwise would be an offense against the law; nor does the fact that bar fixtures can be put to no other use than for the sale of liquor create a property right, of which the owner can not be deprived by a law prohibiting the business of selling liquor.

WRIT OF ERROR to the County Court of Randolph county; the Hon. S. LOVEJOY TAYLOR, Judge, presiding.

H. CLAY HORNER, JAMES M. GRAHAM, RUFUS M. POTTS, and ALFRED ADAMS, for plaintiff in error:

The act under which the plaintiff in error was convicted, viz., "An act to provide for the creation by popular vote of anti-saloon territory within which the sale of intoxicating liquor and the licensing of such sale shall be prohibited and for the abolition by like means of territory so created," violates the provision of the constitution that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title." *Rouse* v. *Thompson,* 228 Ill. 522; *Allardt* v. *People,* 197 id. 509; *Kennedy* v. *LeMoyne,* 188 id. 259; *Henderson* v. *State,* 137 Ind. 552; *People* v. *Parks,* 58 Cal. 624; Cooley's Const. Lim. 205; 26 Am. & Eng. Ency. of Law, (2d ed.) 579.

This provision of the constitution is mandatory. *Burritt* v. *Commissioners,* 120 Ill. 322.

The title embraces more than one subject, in that it provides for creating anti-saloon territory and also provides for abolishing anti-saloon territory. *Docks Co.* v. *Mobile,* 40 So. Rep. 205.

The body of the act embraces and deals with more than one subject and violates the constitutional provision in that it creates two new criminal offenses, both felonies, making certain acts forgery and perjury which were not theretofore crimes. *Milne* v. *People*, 224 Ill. 125; *Bennett* v. *Sullivan County*, 29 Pa. Super. Ct. 120; *Hawkins* v. *Copper Co.* 54 Atl. Rep. 523; *Commonwealth* v. *Kebort*, 212 Pa. St. 289; *McNeely* v. *Oil Co.* 52 W. Va. 64.

It changes the well established fundamental rule and right as to the burden of proof and the quantum of evidence necessary to convict in criminal cases. 4 Elliott on Evidence, sec. 3170; *People* v. *Knopf*, 52 Mich. 582; 1 Starkie on Evidence, 478; Wharton on Crim. Evidence, sec. 1; 3 Greenleaf on Evidence, sec. 29; 1 Phillips on Evidence, 156; 23 Am. & Eng. Ency. of Law, (2d ed.) 948.

It changes the charters—both special and general—of cities, towns and villages; overturns and abolishes the doctrine of home rule or local self-government in such municipalities, and authorizes the voters outside the municipal limits to dictate their policies in certain matters and to dispose of and expend their funds. *Morgan* v. *Schusselle*, 228 Ill. 106; *Updike* v. *Wright*, 81 id. 49; *People* v. *Chicago*, 51 id. 58.

It provides for suspending ordinances in cities and villages for indefinite periods, and at the end of such periods for re-animating such suspended ordinances without the action or intervention of any legislative or representative body. *People* v. *Reynolds*, 5 Gilm. 1; *Boyd* v. *Bryant*, 35 Ark. 69; *Santo* v. *State*, 2 Iowa, 165; *People* v. *Collins*, 3 Mich. 343; *Lambert* v. *Lobdall*, 62 Mo. 128; *State* v. *Great Northern Co.* 10 L. R. A. 250.

Ordinances never become obsolete by lapse of time, and except when limited to a time certain by their terms they continue in force till repealed. *Railway Co.* v. *Eggmann*, 161 Ill. 155; McQuillan on Mun. Ordinances, sec. 39; *People* v. *Wright*, 70 Ill. 388.

It provides that a proposition to be voted on at an election may be submitted to the electors and voted upon at such election without any notice to the voters of the submission of such proposition. *People* v. *Knopf,* 198 Ill. 356; *Morgan* v. *Gloucester,* 44 N. J. L. 157; *James* v. *State,* 1 Ky. 283; *Kenfuld* v. *Irwin,* 52 Cal. 164; McCrary on Election, secs. 117-119; 15 Cyc. 320.

An election without notice is a nullity. Cooley's Const. Lim. (7th ed.) 909.

The submission of a question or proposition to a vote of the people for adoption or rejection is an election. Cooley's Const. Lim. 894.

It attempts to deprive a citizen of the right to know the nature of the accusation against him, in contravention of section 9 of article 2 of the constitution. *West* v. *People,* 137 Ill. 189; *Johnson* v. *People,* 113 id. 99; *Cochran* v. *People,* 175 id. 29; *Cruikshank* v. *United States,* 92 U. S. 542; *Carl* v. *United States,* 105 id. 611.

The subject of the act is not expressed in the title, since it gives new and unusual definitions for words and phrases in common use and gives no hint or suggestion of that fact in the title. *Milne* v. *People,* 224 Ill. 125; *Commonwealth* v. *Kebort,* 212 Pa. St. 289; *Hawkins* v. *Copper Co.* 54 Atl. Rep. 523; *Bridge Co.* v. *Alves,* 90 S. W. Rep. 995.

It provides for regulating sales of intoxicating liquors by druggists, and in certain cases by manufacturers, although the title gives no hint or suggestion about regulating sales to be made by any person or class of persons. *State* v. *Fields,* 46 S. E. Rep. 771; *Commonwealth* v. *Kebort,* 212 Pa. St. 289; *Bennett* v. *Sullivan County,* 29 Pa. Super. Ct. 289.

By section 18 it imposes on the inhabitants of cities and villages a pecuniary obligation without their consent, by compelling them to pay back unexpended license money, and gives no hint or suggestion of that provision in its title. *Morgan* v. *Schusselle,* 228 Ill. 106; *Updike* v. *Wright,* 81

id. 49; *People* v. *Chicago,* 51 id. 58; *State* v. *Great West-*
*ern Co.* 171 Mo. 634.

It creates a new and unreasonable rule as to the burden
of proof in criminal cases, but does not directly or indirectly
give any notice of that fact in the title.   4 Elliott on Evi-
dence, sec. 3170; *People* v. *Knopf,* 52 Mich. 582; *State* v.
*Snell,* 31 Mo. 197; *Mansfield's case,* 22 Pa. Super. Ct. 231.

Acts not hitherto criminal it makes felonious, and pro-
vides that such acts shall be perjury or forgery, regardless
of the question of intent, and gives no notice of that fact
in its title.   *Milne* v. *People,* 224 Ill. 125; *McNeely* v. *Oil*
*Co.* 52 W. Va. 641; *Mansfield's case,* 22 Pa. Super. Ct.
231; *Bennett* v. *Sullivan County,* 29 id. 120; *Hawkins* v.
*Copper Co.* 53 Atl. Rep. 523.

The title gives no intimation that it increases penalties
for subsequent violations, or, indeed, that it imposes any
penalties.  The body of the act provides for both.  *State* v.
*Young,* 47 Ind. 150; *State* v. *Wilson,* 7 id. 516.

The title is misleading, incongruous and deceptive, in
that by section 6 the question, "Shall this ............be-
come anti-saloon territory?" is to be placed on the official
ballot, and by section 9 it is provided that when such ter-
ritory ceases to be "anti-saloon," the proposition, "Shall this
............continue to be anti-saloon territory?" is to be
placed on a separate ballot.

It is misleading and deceptive in that while it professes
to create and abolish anti-saloon territory by like means,
under the operation of its provisions, voters in anti-saloon
territory, under certain circumstances likely to occur, will
never have an opportunity to vote on the question, "Shall
this........continue to be anti-saloon territory?"   Laws
of 1907, sec. 8, p. 301; *Astor* v. *Railway Co.* 2 L. R. A.
789; *State* v. *Brown,* 74 Pac. Rep. 366.

The act upon which the suit at bar is based violates sec-
tion 13 of article 4 of the constitution of 1870 by amending
certain acts by reference only.

In amending a section of a prior statute the old practice was to refer to the title of the prior statute and amend the particular section by the "insertion or striking out of particular, words or the making of some substitution therein," thus making the amendatory act, "of itself, unintelligible," and requiring "examination and comparison with the previous act." This mischief the constitution prohibits. *Timm* v. *Harrison,* 109 Ill. 598; *People* v. *Loeffler,* 175 id. 599; *People* v. *Knopf,* 183 id. 416; *People* v. *Wright,* 70 id. 588; *People* v. *Mahoney,* 13 Mich. 484.

Where the attempt is to amend a particular section of a prior act by simply referring to it and then making some provisions additional to or different from those of the prior section to which reference is made, without re-casting the section amended in full, it is obvious that the constitution is violated. *People* v. *Commissioners,* 221 Ill. 20; *Timm* v. *Harrison,* 109 id. 598; *Chambers* v. *People,* 113 id. 519; *Otis* v. *People,* 196 id. 551; *Railway Co.* v. *People,* 143 id. 446.

The mere fact that portions of the old law are left in force, so that the statutes present the aspect of what has been called "patchwork legislation," as they undeniably do, should not render the act void, if it can be said that the act is reasonably complete and sufficient in itself upon distinct branches of the general subject. *People* v. *Knopf,* 183 Ill. 416; *Badenoch* v. *Chicago,* 222 id. 80.

The act upon which this prosecution is based is, at section 13 thereof, violative of the inter-State commerce clause of the Federal constitution. To the Congress of the United States is reserved the power "to regulate commerce with foreign nations and among the several States and with the Indian tribes." U. S. Const. art. 1, sec. 8.

The business of soliciting orders for goods to be shipped from one State to another is a legitimate feature of inter-State commerce, and cannot be hampered or restricted by license, tax, or other restriction imposed by a State or minor

municipality. *Robbins* v. *Taxing District,* 120 U. S. 494; *Vance* v. *Vandercook Co.* 170 id. 438; *Asher* v. *Texas,* 28 id. 129.

In all cases where a general law can be applicable no special law shall be enacted. Const. of 1870, sec. 28, art. 4.

A law of a general nature is one whose subject matter is common to all people of the State. 6 Current Law, 1524.

Whether or not an act is general, and therefore not within the constitutional inhibition against the enactment of special laws, is to be determined by its operation and not by the form it may be made to assume. *State* v. *Judges,* 21 Ohio St. 11.

An act general in its terms and uniform in its operation upon all persons and subject matter in like situation is a general law, while one that does not bring within its limits all persons and subject matter in substantially the same situation is a special and local law. *People* v. *Martin,* 178 Ill. 611; *Hawthorn* v. *People,* 109 id. 302; *Lippman* v. *People,* 175 id. 101.

The legislative functions must be exercised by the legislature alone, and cannot be delegated to any other person or bodies of persons. *Boyd* v. *Bryant,* 35 Ark. 69; *People* v. *Reynolds,* 5 Gilm. 1; *Santo* v. *State,* 2 Iowa, 165; *People* v. *Collins,* 3 Mich. 343; *Lambert* v. *Lobdall,* 62 Mo. 188.

The legislature has no power to refer a statute to the people to decide by popular vote whether it shall go into effect. If a law is in existence making it a misdemeanor to retail intoxicating liquors without a license the legislature must determine, by a statute, whether licenses shall be granted, and cannot refer the question of granting or rejecting licenses to a popular vote. *Ex parte Wall,* 48 Cal. 279; *Gerbrich* v. *State,* 5 Iowa, 591; *Thorne* v. *Kramer,* 15 Barb. 112; *Parker* v. *Commonwealth,* 6 Pa. 507; *Bradley* v. *Baxter,* 15 Barb. 122; *Rice* v. *Foster,* 4 Harr. 492; *Santo* v. *State,* 2 Iowa, 165; *State* v. *Beneke,* 9 id. 203;

*State* v. *Weir,* 33 id. 134; *Meshmeier* v. *State,* 19 Ind. 482; *Maize* v. *State,* 4 id. 342.

The legislature cannot compel a municipal corporation to incur a debt without its consent. *Morgan* v. *Schusselle,* 228 Ill. 106; *People* v. *Chicago,* 51 id. 17; *Harward* v. *Drainage Co.* 51 id. 130.

Money may be paid to the proper municipal officers for a license to keep a dram-shop and the authorities may refuse to grant the license, but the applicant cannot recover back the money. The payment is a condition precedent and the money goes at once into the public fund. Black on Intoxicating Liquors, sec. 188.

The act upon which this prosecution is based is invalid because, by its terms, it varies the punishment inflicted for the commission of an offense against the State by a majority vote of the people of particular localities and denies to citizens of certain localities the equal protection of the laws, in violation of section 1 of the fourteenth amendment to the Federal constitution. Cooley's Const. Lim. 483-485; *Duncal* v. *Missouri,* 14 Mo. 570.

"Equal protection of the laws" means that no charges or burdens shall be laid on one which are not equally borne by others, and that in the administration of criminal justice he shall suffer no greater or different punishment. *Ho-Ah Kow* v. *Nunan,* 12 Fed. Cas. 252; *People* v. *Dude,* 44 N. Y. Sup. 336; *State Board* v. *Railway Co.* 46 N. J. 146; *Bardier* v. *Connelly,* 113 U. S. 27.

Section 17 of the act, upon which the prosecution at bar is based, is invalid, at least in part, because it attempts to dispense with proof of an indispensable element of guilt of the offense of illegally selling intoxicating liquors. 4 Elliott on Evidence, sec. 3170; *People* v. *Knopf,* 52 Mich. 382; *State* v. *Snell,* 31 Mo. 197.

Fairness and equal opportunity to all voters to express their choice should not be denied, and if such is denied by reason of the defective, insufficient and illegal form of the

ballot, the law prescribing such ballot will be held invalid. *Harvey* v. *Cook County,* 221 Ill. 76; *People* v. *Hanson,* 150 id. 122.

The law upon which the suit at bar is based is invalid because, in forfeiting dram-shop licenses during their term, it deprives dram-shop keepers of vested rights, thereby depriving them of property without due process of law and denies to them the equal protection of the laws, and is, withal, for the above and other reasons, an oppressive, unjust and illegal application of the police powers of the State.

No State shall make or enforce any law which shall abridge the privileges or the immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. U. S. Const. 14th amendment, sec. 1.

Dram-shop licenses cannot be forfeited during their term by subsequent legislation. *Watts* v. *Commonwealth,* 78 Ky. 329; *Adams* v. *Hackett, 27* N. H. 229; *State* v. *Andrews,* 28 Mo. 14.

All that is beneficial from property arises from its uses, and whatever deprives a person of them deprives him of all that is desirable or valuable in the title or possession. *Munn* v. *People,* 69 Ill. 86; *Bartemeyer* v. *Iowa,* 13 Wall. 129; *Pumpelly* v. *Green Bay Co.* 13 id. 177.

The act upon which this prosecution is based is unconstitutional because it is violative of section 13 of article 4 of the constitution of 1870, in respect to the revival of laws.

"No law shall be revived   *   *   *   by reference to its title only, but the law revived   *   *   *   shall be inserted at length in the new act." Const. 1870, art. 4, sec. 13.

"No act or part of an act repealed by the General Assembly shall be deemed to be revived by the repeal of the repealing act." Rev. Stat. chap. 131, sec. 3.

If the so-called Local Option law is in force in a given locality, then the Dram-shop act, and all other laws passed

in relation to the liquor traffic, inconsistent and repugnant to the provisions of the so-called Local Option law, are not in force in such locality contemporaneously with the so-called Local Option law.   Black on Intoxicating Liquors, sec. 104; *Hearn* v. *Brogan,* 64 Miss. 339; *Robertson* v. *State,* 6 Tex. App. 155; *State* v. *Yewell,* 63 Md. 122; *Donaldson* v. *State,* 15 Tex. App. 29; *Young* v. *Commonwealth,* 14 Bush, 161; *Rathburn & Co.* v. *State,* 80 Tex. 283; 23 Cyc. 93.

W. H. STEAD, Attorney General, and JOSEPH B. SIMPSON, State's Attorney, (ERNEST A. SCROGIN, CHURCH & McMURDY, and JOEL C. FITCH, of counsel,) for defendant in error:

The act embraces but one general subject, viz., provision for the determination, by popular vote, in any community, whether the sale of intoxicating liquors shall be absolutely prohibited therein or left to the discretion of the municipal authorities. *Manchester* v. *People,* 178 Ill. 285; Cooley's Const. Lim. (7th ed.) 169, *et seq.;* *Hudnall* v. *Ham,* 172 Ill. 76.

It is not required that the title of the act shall be an index, in detail, of all its contents.   It is sufficient if it properly indicates the main or primary subject of the act. *Plummer* v. *People,* 74 Ill. 861; *Hronek* v. *People,* 134 id. 139; *Bobel* v. *People,* 173 id. 19; *Ritchie* v. *People,* 155 id. 98.

If the secondary subject is so connected with and related to the primary subject as to be properly regarded as an integral part of it or auxiliary thereto, or as prescribing means and methods for effectuating its purpose, then, although not specifically indicated or expressed in the title, it cannot be declared invalid on that ground.   Authorities cited *supra.*

If a constitutional infirmity affects only some particular provision of the act, but by eliminating such part or pro-

vision the remainder of the act is capable of being fully executed, the objectionable part, only, will be rejected and the rest will stand. *Myers* v. *People*, 67 Ill. 503; Cooley's Const. Lim. (7th ed.) 177; *People* v. *Nelson*, 133 Ill. 565; *People* v. *Knopf*, 183 id. 410.

The fact that this act is to become operative in any particular locality only in the event of a vote of the people thereon in nowise changes the rule last above announced. Cooley's Const. Lim. (7th ed.) 249; Black on Const. Law, 62; Black on Interp. of Law, 96; Sutherland on Stat. Const. chap. 9; *People* v. *Kipley*, 171 Ill. 44; *Dupee* v. *Swigert*, 127 id. 494; *Stevens* v. *Ohio*, 179 U. S. 680; *Ex parte Dryree*, 105 S. W. Rep. 493.

The act is presumed to be constitutional, and the court will exercise the utmost liberality of interpretation and construction in an effort to sustain the validity of the enactment. *Hudnall* v. *Ham*, 172 Ill. 76; *Burke* v. *Monroe County*, 77 id. 610; *Donnersberger* v. *Prendergast*, 128 id. 229; *People* v. *Nelson*, 133 id. 565; *Hogan* v. *Akin*, 181 id. 448.

Where two interpretations are possible, that one will be adopted which most tends to sustain the act. *Hogan* v. *Akin*, 181 Ill. 448.

To render a statute unconstitutional it must clearly violate the plain provisions of the constitution, all doubts and intendments being resolved in favor of the statute. *Chicago* v. *Cement Co.* 178 Ill. 372.

Only those persons whose rights in respect to the matters in controversy are injuriously affected thereby, and then to the extent, only, and in those particulars, only, as to which they are so injuriously affected, can question the validity of the act. *State* v. *Bare*, 62 Vt. 43; *McLaury* v. *Watelsky*, 13 Tex. App. 404; *Wellington, petitioner*, 16 Pick. 87; *Ohio* v. *Dallison*, 194 U. S. 445; *Neifing* v. *Pontiac*, 56 Ill. 173; *Bobel* v. *People*, 173 id. 19; *Chicago* v. *Wolf*, 221 id. 130.

The Local Option act is an entirely new statute, whose purpose is clearly indicated in the title, and the fact that its necessary effect is to modify, or even to defeat, the operation of some existing provisions of law relating to the subject does not bring it into conflict with the constitution. *People* v. *Wright,* 70 Ill. 396; *People* v. *Knopf,* 183 id. 410; *Chicago* v. *Reeves,* 220 id. 274; *People* v. *Mahoney,* 13 Mich. 484.

The Local Option act is a complete enactment. *People* v. *Hoffman,* 116 Ill. 587; *People* v. *Reynolds,* 5 Gilm. 12; *Insurance Co.* v. *Swigert,* 104 Ill. 653; *Gordon* v. *State,* 46 Ohio St. 607.

Where a statute does not mention inter-State commerce it will be construed so as not to conflict with the constitution and laws of the United States, and is limited to intra-State commerce only. *Coit & Co.* v. *Sutton,* 102 Mich. 324; *Sugar Mill Co.* v. *Wolf,* 118 Fed. Rep. 239; *Butler Bros.* v. *Rubber Co.* 156 id. 1; *Middleport* v. *Insurance Co.* 82 Ill. 562.

The Local Option law is a general law and not a special law. *People* v. *Hoffman,* 116 Ill. 587; *State* v. *Pond,* 93 Mo. 606; *Ex parte Swan,* 96 id. 44.

While it is true that under our constitution where a general law can be made applicable no special law can be enacted, the General Assembly is the judge as to whether a general law could be made applicable in any given case. *Owners of Lands* v. *People,* 113 Ill. 296.

A saloon-keeper acquires no vested right either in his license or in the license money for the unexpired period. *Moore* v. *Indianapolis,* 120 Ind. 483; Black on Intoxicating Liquors, secs. 51, 87, 188; *State* v. *Cooke,* 24 Minn. 247; 19 Am. & Eng. Ency. of Law, 495.

It is competent for the General Assembly to provide that a law shall go into operation upon the happening of a contingency, and a popular vote is a proper contingency. *Insurance Co.* v. *Swigert,* 104 Ill. 653; *People* v. *Reynolds,*

5 Gilm. 12; *People* v. *Salomon,* 51 Ill. 55; *Erlanger* v. *Boneau,* 51 id. 100; *People* v. *Hoffman,* 116 id. 594; *People* v. *Cooper,* 83 id. 585; *Rouse* v. *Thompson,* 228 id. 535; *Guild* v. *Chicago,* 82 id. 476.

A licensee is presumed to know that his term may be cut short by the adoption of ·a local option law and to take that risk when he pays his license fee in advance. *Peyton* v. *Hot Springs Co.* 58 Ark. 236.

Liquor licenses are not contracts, grant no vested rights, are not property in a legal sense, and are merely temporary permits to do what would be an offense against the general law. *McKinney* v. *Salem,* 77 Ind. 213; *Rippey* v. *Texas,* 68 S. W. Rep. 689.

Local option laws do not violate the fourteenth amendment to the Federal constitution. *Bartemeyer* v. *Iowa,* 18 Wall. 129; *Rippey* v. *State,* 73 S. W. Rep. 15; *Ex parte Swan,* 96 Mo. 5; *Jourdan* v. *Evansville,* 67 L. R. A. 613.

In a prosecution for the unlawful selling of intoxicating liquors it is competent to prove the payment of the revenue tax, even in the absence of a statute making such proof *prima facie* evidence. *State* v. *Howard,* 91 Me. 396; *State* v. *Lynde,* 77 id. 561; *State* v. *Gorham,* 65 id. 270; *State* v. *Wiggin,* 72 id. 425; *Gerstenkorn* v. *State,* 38 Tex. Crim. 627; *Gersteman* v. *State,* 35 id. 318; *Martin* v. *State,* 61 S. W. Rep. 486.

In the absence of any evidence introduced by the defendant the receipt is not conclusive evidence, but the jury must be satisfied beyond a reasonable doubt. *State* v. *Anderson,* 129 N. C. 521; *State* v. *Liquors,* 80 Me. 57; *State* v. *O'Connell,* 19 Atl. Rep. 86; Black on Intoxicating Liquors, sec. 60; 2 Wigmore on Evidence, sec. 1354; *State* v. *Barrett,* 138 N. C. 630.

It is no objection that the issuance of a revenue tax receipt is made *prima facie* evidence, as the jury may infer that the one to whom the receipt was issued had paid the tax. *State* v. *O'Connell,* 19 Atl. Rep. 86.

234—11

No one has a vested right in the rules of evidence, and the General Assembly may provide a designated fact that shall be evidence of another fact. *Meadowcroft* v. *People,* 163 Ill. 56.

It is competent to provide by law that in a liquor prosecution it shall not be necessary to state the kind of liquor sold. This has been done in our Dram-shop act. It is, however, necessary in an indictment to state that the liquor was intoxicating liquor. The name of the purchaser need not be stated. The general averment of illegal sale of intoxicating liquor is sufficient. *Zarresseller* v. *People,* 17 Ill. 101; *Cannady* v. *People,* 17 id. 158; *Higgins* v. *People,* 61 id. 11; *State* v. *Teahan,* 50 Conn. 92; *Buell* v. *State,* 72 Ind. 523; *Commonwealth* v. *Morgan,* 149 Mass. 314; *Commonwealth* v. *Bennett,* 108 id. 27; *State* v. *Blaisdell,* 33 N. H. 388; *Butler* v. *State,* 25 Fla. 347.

It is no objection that the contingency upon which the law shall go into operation is a majority vote of those voting upon the proposition submitted to the voters. *Bloomershine* v. *Uline,* 159 Ind. 500; *State* v. *Gerhardt,* 145 id. 439; *Otte* v. *Ohio,* 9 Ohio C. C. (N. S.) 293; *Williams* v. *Citizen,* 40 Ark. 290; *Trammell* v. *Bradley,* 37 id. 379; *Rohrbacher* v. *Jackson,* 51 Miss. 735.

The proposition submitted to voters under a local option law is required to be printed upon the ballot in every case where it is practicable to do so. It was competent for the General Assembly to provide a different manner of voting upon the question of continuing anti-saloon territory from that used when such territory was created, if it had so desired, because a State has the power to prohibit the sale of intoxicating liquors altogether, and it can do anything less than that. *Timm* v. *Harrison,* 109 Ill. 593; *Rippey* v. *Texas,* 193 U. S. 504.

The license of plaintiff in error was, in terms, issued subject to all the laws of Illinois which then existed or might thereafter be in force.

A local option law does not, upon its adoption, deprive dram-shop keepers of the equal protection of the laws. *Rippey* v. *State*, 68 S. W. Rep. 687, and 73 id. 15; 19 Am. & Eng. Ency. of Law, 495.

The law of intoxicating liquors is *sui generis*. *State* v. *Judges*, 50 N. J. L. 595.

Restrictions upon the liquor business are valid which would be obnoxious to other pursuits. *Swift* v. *People*, 162 Ill. 544; *Carrollton* v. *Bazzette*, 159 id. 294; *Schwuchow* v. *Chicago*, 68 id. 449; *Ex parte Christiansen*, 85 Cal. 213.

A saloon-keeper has no vested rights in the use of bar fixtures for selling intoxicating liquors. *Mugler* v. *Kansas*, 123 U. S. 623; *People* v. *Hawley*, 3 Mich. 330; *Adler* v. *Whitbeck*, 4 Ohio St. 539; *Menken* v. *Atlanta*, 7 Ga. 668.

The contention that the Local Option law violates the provisions of the constitution with respect to the revival of laws is unsound. No laws are revived, as none are repealed. Their operation, merely, is suspended. *Rathburn* v. *State*, 88 Tex. 281; *Hearn* v. *Brogan*, 64 Miss. 339; *Young* v. *Commonwealth*, 77 Ky. 161; *People* v. *Stanley*, 101 Mich. 93; *Mernaugh* v. *Orlando*, 41 Fla. 433; *People* v. *Brush*, 83 N. Y. Supp. 607; 86 id. 144; Black on Intoxicating Liquors, sec. 104; 19 Am. & Eng. Ency. of Law, 512.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

John W. McBride, plaintiff in error, obtained a license from the village of Coulterville, in Randolph county, to keep a dram-shop and sell intoxicating liquors therein from April 30, 1907, to May 1, 1908. An election was held in Coulterville precinct, which included the village of Coulterville, on November 5, 1907, under the provisions of an act entitled "An act to provide for the creation by popular vote of anti-saloon territory within which the sale of intoxicating liquor and the licensing of such sale shall be prohibited and for

the abolition by like means of territory so created," in force July 1, 1907. (Laws of 1907, p. 297.) The vote was in favor of making the precinct anti-saloon territory, and the result of the election was duly declared. On December 7, 1907, the State's attorney filed in the county court an information containing two counts, charging plaintiff in error with selling intoxicating liquor within said precinct. Plaintiff in error demurred to the information and moved to quash it on the ground that said act was in conflict with the constitution and therefore null and void, and in the motion twenty-five specifications were made. The court denied the motion, and the defendant having waived a jury, there was a trial by the court. It was proved that the plaintiff in error, on December 6, 1907, opened his dram-shop and sold a glass of whisky, which was drank there by the purchaser. Plaintiff in error offered in evidence an ordinance of the village of Coulterville providing for the issuing of licenses to keep dram-shops, and his license issued under the ordinance, and also an internal revenue receipt, called a United States stamp for special tax. He testified that at the time the glass of whisky was sold the unearned portion of his license fee had not been re-paid or tendered to him by the board of trustees of the village; that the village of Coulterville contains about two hundred acres and is included in the precinct of Coulterville, which embraces two and one-half townships. He was found guilty by the court and fined $50. The validity of said act was the matter in dispute, and a writ of error was sued out from this court to bring the record here for review.

The sole question to be determined is whether the act under which plaintiff in error was prosecuted is in conflict with provisions of the constitution, and is thereby rendered null and void. The assignment of errors upon the record includes twenty-five grounds upon which it is alleged that the act violates the constitution, and the argument in support of the assignment of errors contains eleven main sub-

divisions, under which there are very numerous sub-headings or specifications, covering all the gradations from important to insignificant and from serious and substantial to shadowy and tenuous. If it should appear that some of them scarcely deserve a place in an opinion of this court, the fact that they are mentioned and discussed results from an effort to cover, in some form, every question that is raised by the learned counsel for plaintiff in error.

The rule of law is, that an investigation like this, concerning the constitutionality of an act of the legislature, begins with the presumption that the act is valid. All doubts or uncertainties arising either from the language of the constitution or the act must be resolved in favor of the validity of the act, and the court will only assume to declare it void in case of a clear conflict with the constitution. The duty of the court is to so construe acts of the legislature as to uphold their constitutionality and validity if it can reasonably be done, and if their construction is doubtful, the doubt will be resolved in favor of the law. *People ex rel.* v. *Thompson,* 155 Ill. 451; *People* v. *Hutchinson,* 172 id. 486; *City of Chicago* v. *Manhattan Cement Works,* 178 id. 372; *Arms* v. *Ayer,* 192 id. 601.

Most of the objections to this act relate to matters which did not arise upon the trial of plaintiff in error and concern alleged rights of which he was not deprived in any manner. Among those questions are the propositions that the act creates new criminal offenses of forgery and perjury; that it changes the quantum of evidence necessary to convict, by making a United States special tax stamp *prima facie* evidence; that it regulates sales by druggists; that it conflicts with the commerce clause of the Federal constitution, and that it creates debts of municipalities without their consent. Plaintiff in error was not prosecuted for perjury or forgery; the tax stamp or receipt was not offered in evidence against him; he did not sell as a druggist and was not engaged in inter-State commerce. Counsel dispute the validity of vari-

ous other provisions by which plaintiff in error was not injuriously affected unless such provisions are void and their invalidity renders the whole act void. Courts do not entertain objections to the constitutionality of an act unless the objection is made by one whose rights have been in some way affected, and the plaintiff in error is only entitled to a consideration of most of the questions raised by his counsel so far as they may affect the validity of the act as a whole.

Following the course of the argument of counsel for the plaintiff in error, the first proposition met with is, that the act and the title embrace more than one subject, in violation of the provision of section 13 of article 4 of the constitution that "no act hereafter passed shall embrace more than one subject, and that shall be expressed in the title. But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed." Counsel say that bringing anti-saloon territory into existence and wiping it out of existence are ideas as wide apart as the poles, and that the title covers these opposite ideas. The objection would properly be made to the body of the act, and not to the title. Plurality of title is not an objection to an act which deals with but one subject. If there is but one subject in the act and the title expresses more than one, the subject expressed in the title and not embraced in the act would be regarded as surplusage. If the subject is not expressed in the title or if the act embraces more than one subject the act will be void, and in this act the creation and abolition of anti-saloon territory is expressed in the title and covered by the body. In deciding the question whether the act embraces more than one subject we are to be governed by certain well established rules. The only purpose of the provision of the constitution is to prevent the joining in one act of incongruous and unrelated matters, and the word "subject" is not synonymous with "provision." Any number of provisions may be contained in an act, however

diverse they may be, so long as they are not inconsistent with or foreign to the general subject and may be considered in furtherance of such subject. The requirement that an act shall embrace but one subject is not intended to hamper the legislature or embarrass honest legislation, but it is intended to prevent incorporating in an act matters not related to the subject of legislation and of which the title gives no hint. An act may contain many provisions and details for the accomplishment of the legislative purpose, and if they legitimately tend to effectuate that object the act is not contrary to the constitutional provision. (*Town of Manchester* v. *People,* 178 Ill. 285; *Meul* v. *People,* 198 id. 258.) The constitutional prohibition against more than one subject not being directed against the title but against the act itself, the question now being considered is to be determined by the body of the act, and there is in the act but one general subject. That subject is the determination by the legal voters of a certain district whether the sale of intoxicating liquors shall be prohibited therein. The act merely enables particular communities to determine by popular vote whether sales of liquor may be licensed or not, and if certain territory is made anti-saloon territory, the act also prescribes methods for restoring it to its former condition, so that the question of license shall be left to municipal authorities.

It is next claimed that the provision in question is violated by the creation of two new criminal offenses of which the title gives no hint, and which, aside from the act, would not be crimes. Section 4 of the act provides for filing a petition, with a verified statement that the signatures are genuine and covering other matters relating to the petitioners, and it provides that whoever, in making the sworn statement, shall knowingly, willfully and corruptly swear falsely shall be deemed guilty of perjury, and whoever forges the signature of any person upon any petition or statement provided for in the act shall be deemed guilty of

forgery. These are two of the objections which do not concern the plaintiff in error unless their invalidity would affect the whole act, and the rule is, that if an act embraces some matter not expressed in the title it is unconstitutional and void only as to that part, unless the provisions are so connected together in subject matter, meaning or purpose that it cannot be presumed that the legislature would have passed or the people have voted for the one without the other. The constitutional provision is, that if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed. If the title of an act fairly indicates the general subject and reasonably covers all the provisions of the act, and is not calculated to mislead the legislature or the people, it is a sufficient compliance with the constitutional requirement. The generality or comprehensiveness of the title is no objection, provided the title is not misleading or deceptive and fairly directs the mind to the subject legislated upon. It is not required that the title should be either an abstract, a synopsis or an index of the contents of the act. If such were the case the title would have to be as comprehensive as the act itself, and that is not the object of the constitution. In determining whether a provision is embraced within the title of an act a liberal construction is to be given to the constitution, and unless the act contains matters having no proper connection or relation to the title it will not be void as to such matters. The constitution is obeyed if all the provisions relate to one subject indicated in the title, and are parts of it or incident to it or reasonably connected with it. (*Burke* v. *Monroe County*, 77 Ill. 610; *People* v. *Nelson*, 133 id. 565; *Ritchie* v. *People*, 155 id. 98; *Hudnall* v. *Ham*, 172 id. 76.) It is contended that there is some difference in the rule between an act which is submitted to popular vote and one which becomes operative without such a vote, but we can see no reason or foundation for such a distinction. Presumably the same motive

which influenced the legislator in voting for the act would influence the elector in voting for it, and a title which would direct the mind of a legislator to the general subject of an act would also fairly direct the mind of the voter to the same subject. The rules stated lead to the conclusion that the act is not void nor the title defective by reason of the provisions respecting perjury and forgery. The sworn statement provided by the act is a part of the machinery for carrying into effect the object of the act and the petition is declared to be a public document. It is a matter where the law requires an oath, but, whether a false oath would be perjury without this act or not, the provision is only a proper and legitimate safeguard of the election. In election laws generally, it is usual, and has never been regarded as illegal, to prescribe regulations and safeguards of the election and to inflict severe punishments for false oaths, changing ballots, practicing fraud upon electors, or doing other things destructive of the object of the act. It is urged that to declare the forgery a criminal offense is to introduce a new crime, for the reason that the act does not include the intent to defraud or deceive. The answer is, that the term itself embraces a fraudulent intent. It includes the making of a false written instrument for the purpose of fraud and deceit. But if the act does create a new offense the provision is within the general purpose of the act. The legislature and the people who adopt the act would naturally expect to find in the body of an act providing for an election the punishment of offenses such as are customarily included in election laws.

Counsel rely upon the decision in the case of *Milne* v. *People*, 224 Ill. 125, as sustaining their position, but they misapprehend the nature of that decision. The title of the act then considered included only the punishment of crimes against children, and therefore indicated nothing except the punishment of existing crimes if committed against children, but in the body of the act the legislature attempted to create

a new and hitherto unknown felony of which the title gave no hint.

The next specification is, that this act changes the well established fundamental rule as to the burden of proof and quantum of evidence necessary to a conviction in a criminal case. The act provides that it shall not be necessary to state the kind of liquor sold nor the name of any person to whom it was sold, and counsel say that it does not require a statement that the liquor was intoxicating. In that conclusion they are clearly wrong. Any prosecution under the act would be for selling intoxicating liquor, and it would be necessary to allege such a sale. Under the same head, objection is made to the provision that the issuance of an internal revenue special stamp or receipt by the United States shall be *prima facie* evidence of the sale of intoxicating liquor by the person to whom it is issued at his place of business where the stamp or receipt is posted. The act provides that intoxicating liquors shall include all distilled, spirituous, vinous, fermented and malt liquors, and it permits a charge of selling intoxicating liquor without specifying the kind. The plaintiff in error was charged in the declaration with selling intoxicating liquor, and it was proved that he sold whisky, so that his rights were not affected in any way by the provision and the stamp or receipt was not offered in evidence against him. He offered it in evidence himself. He raised no question at the trial concerning the information on the ground that it did not specify the kind of liquor sold. In another part of the argument, where his counsel recur to the same provision and object to it as in contravention of section 9 of article 2 of the constitution, as not informing the accused of the nature of the charge against him, they concede that if the provision is invalid it would not be fatal to the whole act. The provision is substantially the same as the one contained in section 14 of the Dram-shop act, which has stood the test for a great many years. The provision was sustained in *Cannady* v.

*People,* 17 Ill. 158, *Myers* v. *People,* 67 id. 503, and other cases.    The provision respecting the stamp or receipt has no tendency to overturn the doctrine of reasonable doubt in criminal cases.    The term *"prima facie* evidence" implies evidence which may be rebutted and overcome, and the provision in question merely establishes a rule of evidence. The legislature may prescribe that a fact shall be *prima facie* evidence of a certain other fact if it has a tendency to prove such other fact.    The fact upon which the presumption is to rest must have some fair relation to or some natural connection with the fact to be proved, and the existence of the established fact must reasonably tend to raise an inference of the main fact.    The accused must also have a fair chance to make his defense and to submit the case to a jury upon all the evidence, which must establish his guilt beyond a reasonable doubt.    (*Meadowcroft* v. *People,* 163 Ill. 56.) The issuance of an internal revenue special stamp or receipt to a person engaged in business and the posting of the same in his place of business tend to prove that such person is engaged in the sale of intoxicating liquor at that place. *Prima facie* it is issued to enable the holder to engage in the business of selling intoxicating liquor, and when he does engage in business and posts it in his place of business it is a fair inference that liquor is sold at that place.    If a particular sale to a particular person should be charged, the stamp or receipt would not have any tendency to prove that the particular sale was made, but if a sale were proved the document would tend to establish the nature of the thing sold.    That question, however, does not concern the plaintiff in error, and, in any event, it would not affect the act as a whole.

It is next urged that the act provides for an election without any notice.    It may be conceded that notice is essential to a valid election, but no such question is involved in this case.    The act provides for notice, and, after specifying the notice to be given, provides that the failure to give

notice shall not affect the validity of the vote. The question whether that provision is valid could only arise upon a failure to give the prescribed notice, and whether such failure would invalidate an election might depend upon the facts of the particular case, such as whether there was a mere irregularity in giving notice, whether the voters all knew of the proposition, and whether the result was affected in any way. That question does not arise on this record and could not affect the whole act.

The next specification is, that the act provides for suspending ordinances for indefinite periods of time and again restoring them without the intervention of any legislative body. The act provides that during the time any territory is anti-saloon territory the operation of ordinances relating to sales of liquor and dram-shop licenses therein shall be suspended, so far as inconsistent with the act. Counsel do not point out any constitutional provision which is violated, but say that the act in that respect is neither good law nor good sense nor in conformity with republican institutions or principles of self-government. That reflection seems to question the wisdom of the legislature or the policy of the law, with which we are not concerned.

Next it is said that the act changes the charters of municipalities, overturns and abolishes local self-government, and authorizes the voters outside of municipal limits to dictate the policies of municipalities and to dispose of and control their funds. Municipal corporations are creatures of the legislature, and their powers and privileges may be changed, modified or taken away at any time by general law. The position assumed by counsel is, that the provision is void for want of power in the legislature to enact it and also because it is not contained in the title of the act. It is directly within the general subject of the title, and the only respect in which it is claimed to be in violation of the constitution is, that it requires a municipality to refund the unearned portion of a license fee received by it. The pro-

vision for the return of the unearned portion of the license
fee is equitable, but if void it would not affect the rest of
the act.    It is true that the legislature cannot compel a mu-
nicipality to incur a debt, (*Morgan* v. *Schusselle,* 228 Ill.
106,) but we do not regard this provision as doing that.
It simply provides that money in the treasury of the city
for which the person who deposited it received no bene-
fit shall be refunded.    The constitutional limitation of mu-
nicipal indebtedness has no application to a case where
the municipality has received money for licenses which it
ought to refund.    If it had such application and the obliga-
tion to refund should be regarded as a debt, a city indebted
to the limit could not voluntarily return license fees which
had been paid in for a license which the party could not
use, and no one would attempt to uphold such a doctrine.

The next specification is, that the act gives new and un-
usual definitions to words and phrases and gives no hint or
suggestion of that fact in the title.    The act defines certain
words and terms used in it and explains their meaning as
they are employed in this particular act.    No provision of
the constitution is pointed out which forbids such definitions
and they simply conduce to brevity and avoiding repetitions.
Counsel are dissatisfied with the definition given to intoxi-
cating liquors as including all distilled, spirituous, vinous,
fermented and malt liquors, because the definition does not
inform them how much water might be mingled with such
liquors and still leave them intoxicating liquors.    The pro-
vision is of the same nature as the one in the Dram-shop
act, which says that intoxicating liquors shall be deemed to
include spirituous, vinous or malt liquors, and we are not
advised that any difficulty has arisen in the many years
during which that act has been in force in ascertaining its
meaning.    An argument that a definition should specify how
much water, seltzer or other liquid not intoxicating could
be put into a mixed drink and keep it within the definition,
or how much whisky would be required to constitute a

sale of intoxicating liquor, would be entitled to as much consideration as the point made by counsel. They do not offer any good reason why the act should be held invalid on account of their alleged criticism.

The next specification is, that the act provides for regulating the sale of intoxicating liquor by druggists and that the title does not say anything about such regulation. The act provides for creating and abolishing territory in which the sale and licensing of sales shall be prohibited, and it exempts from such prohibition sales of liquor by druggists for certain purposes under certain prescribed conditions. Such sales as are specified do not partake of the nature of the saloon business, and it has always been regarded as proper to exempt such sales either from the requirement of a dramshop license or from prohibitory laws.

Counsel next say that the act gives persons residing outside of the city or village the right to determine the use of money in such city, and in this they again refer to the refunding of license fees. The voters of a community simply determine that territory shall or shall not be anti-saloon territory and do not make the law. The legislature have made the law that the license fee shall be refunded in anti-saloon territory. The voters do not determine whether the license fee shall be refunded or not, and the point which is made that the subject of refunding is not expressed in the title does not require further attention.

A general assault is made on the title on the ground that it is misleading, incongruous and deceptive. One reason given is, that it apparently provides for abolishing anti-saloon territory by the same means by which the territory was created, while, in fact, in some cases, on account of changes in precincts or districts, the voters can never again vote on the question. We regard this as a misapprehension of the provisions for accomplishing the purpose expressed in the last clause of the title. We do not think of any case where it would be impossible, on account of change of

boundaries, to submit the question again to voters of a particular territory by the use of the separate ballot provided for in section 9. Another reason given for charging that the title is misleading and deceptive is, that it uses the words "popular vote" while the act provides that a majority of the legal voters voting upon the proposition shall govern. Counsel concede that a law is not invalid because a majority of those voting on a proposition decide the question, and it seems to us an extraordinary proposition that an election at which every elector is entitled to vote should not be regarded as an election by popular vote. It is further argued that the form of the ballot is misleading and deceptive, and that the legislature have been guilty of a studied, inexcusable and altogether diabolical effort to defeat and circumvent the will of the voters by adopting a form of ballot which means the opposite of what the voter would naturally understand. As we understand them, they contend that the average voter will consider that he is voting for or against saloons and that "no" means anti-saloon, while under the form of ballot adopted a vote of "yes" means a vote against saloons. We do not see why that should be so. If the voters desire the district to be anti-saloon territory there seems to be no good reason why they should not understand that "yes" is a vote in favor of that proposition. It is not to be presumed that voters will not know what they are voting about, and the case is not at all like *Harvey* v. *Cook County,* 221 Ill. 76, where the ballot was so ambiguous as clearly to mislead voters.

Next it is said that the act violates the provision of section 13 of article 4 of the constitution, that laws shall not be revived or amended by reference to the title only. The act does not purport to amend or revive any law. Its only effect is to withdraw certain specified territory from the operation of existing laws by which the sale of liquor is licensed, regulated or prohibited, and as no law has been repealed none will be revived by virtue of the act. The act

adopts the law as to other elections but prescribes some special regulations for elections under this act. There is no objection to the adoption in an act of the provisions of other laws which are not amended or changed thereby. The act also adds certain conditions to existing laws, under which druggists may make sales in anti-saloon territory for medicinal, mechanical, sacramental and chemical purposes, not to be drank upon the premises, but it makes no change in existing laws in other places. Druggists are exempt from the operation of the act so long as they comply with its terms, but no other law is amended or purports to be amended by the act. It does not amend the Ballot law by the provision that the proposition shall be printed on the ballot below the list of candidates, which applies only to elections under this act.

Another point made by counsel is, that the act violates the inter-State commerce clause of the Federal constitution, and although that question is not involved in this case and any invalidity of the provision would not affect the act, the position of counsel is not tenable. In the section designed to prevent evasion of the act it is provided that the taking of orders or the making of agreements in anti-saloon territory for the sale or delivery of intoxicating liquors shall be held to be an unlawful selling. We are required to interpret the act in such a way as to uphold it rather than in a way which would invalidate it, (*People ex rel.* v. *Hinrichsen,* 161 Ill. 223,) and it is always presumed that the legislature did not intend to exceed, and have not, in fact, exceeded, their jurisdiction. (Endlich on Interpretation of Statutes, sec. 171; *Stanton* v. *City of Chicago,* 154 Ill. 23.) It is not necessary every time a law is passed that the legislature should specifically state that there is no intent to interfere with inter-State commerce or some other subject of which they have no jurisdiction. The act does not purport to control in any manner the importation of liquor from other States.

It is argued at some length that the act is in violation of the constitution because it is not a general law but a local one. The constitution prohibits special laws in certain enumerated cases and also in all other cases where a general law can be made applicable, but the question whether a general law can be made applicable in any case other than those enumerated is for the legislature and not for the courts. (*Owners of Lands* v. *People,* 113 Ill. 296.) Unless some other provision of the constitution is violated, the decision of the legislature whether a general law can be made applicable in any given case is conclusive. It is not contended that this act is local or special in the ordinary sense, but the reason alleged is, that it is only to be put in operation in particular localities as a result of submitting it to a vote of the people. While counsel say that the act is a local and special one, the real point made is that legislative functions have been delegated to the people. It is the law that legislative functions must be exercised by the legislature alone and cannot be delegated to any other person or body of persons, but the decisions in this State have settled beyond question that the legislature may enact laws which will become operative by a vote of the people of the district to be affected, provided the law contains an entire and perfect declaration of the legislative will. From the very beginning it has been held that the legislature have power to pass a law the operation of which depends upon the happening of a contingency or future event, and that such contingency may be an affirmative vote of the people to be affected by it. (*People* v. *Reynolds,* 5 Gilm. 1; *People* v. *Salomon,* 51 Ill. 37; *Home Ins. Co.* v. *Swigert,* 104 id. 653; *People* v. *Hoffman,* 116 id. 587; *Rouse* v. *Thompson,* 228 id. 522.) The law must be complete when it leaves the legislature, and require nothing to perfect it except the decision that it shall be operative within a certain district. This act does not purport to deal with the liquor traffic except in anti-saloon territory, and as to that subject it is perfect and complete

234—12

and not in violation of any. constitutional provision.  *People*
v. *Knopf,* 183 Ill. 410.

The next specification is, that the act is invalid because
it varies the punishment for selling liquor in different lo-
calities.    Under the Dram-shop act the punishment is the
same for first and subsequent offenses, while subsequent of-
fenses are punished more severely under this one.    The
offenses are not identical.    The offense in the Dram-shop
act is selling in less quantity than one gallon or in any
quantity to be drank upon the premises, while the offense
punishable under this act consists in selling, bartering or ex-
changing any intoxicating liquor in any quantity.    The act
does not deny to a person the equal protection of the laws
guaranteed by the fourteenth amendment to the Federal
constitution.    (*Ohio* v. *Dollison,* 194 U. S. 445.)    The view
of counsel that if one accused of selling liquor in anti-saloon
territory should take a change of venue to another township
he would escape the larger penalty is a mistake.    The change
of venue would have no effect whatever on the degree of
punishment.

It is next argued that the act deprives dram-shop keep-
ers of their property without due process of law.    Licenses
to sell liquor are not contracts and create no vested rights.
They are merely temporary permits to do what would other-
wise be an offense against the law, and the license of plaintiff
in error stated on its face that it was subject to all the laws
of the State and ordinances of the village which then were
or might thereafter be in force.    Counsel admit that the li-
cense is not property,—that the law may be changed and
the license ended although paid for,—and that in such a
case a dram-shop keeper has no vested rights to continue
the business by virtue of his license, but they contend that
he has vested rights in the property which cannot be used
for anything else.    To say that a dram-shop keeper has a
right to continue the use of his bar fixtures for the sale of
liquor because he can put them to no other use would au-

thorize him to continue the business, and be equivalent to holding that the law could not be changed so as to deprive him of his license or the right to continue the business, and that clearly is not the law. When plaintiff in error provided bar fixtures to carry on the business of selling liquor under a license, subject to all laws then in force or which might thereafter be enacted, he took the risk that the business might be made unlawful.

We have considered every argument or proposition propounded by counsel for plaintiff in error and have not found anything which renders the act void or the conviction of plaintiff in error erroneous. If any provision, such as the one making a stamp or receipt *prima facie* evidence or the one which purports to validate an election without notice, should be applied in some other case in such a way as to deprive any party of his legal rights he will not be without remedy. Plaintiff in error has not been injuriously affected by any such provision and he has not been deprived of any constitutional or legal right.

The judgment of the county court is affirmed.

*Judgment affirmed.*